**U.S. Department of Labor**           Administrative Review Board
                                        200 Constitution Avenue, N.W.
                                        Washington, D.C. 20210



RECEIVED
OCT 0 3 2005
ROBINSON & ASSOCIATES
LAWYERS

RECEIVED
APR 2 8 2006
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

In the Matter of:

ADMINISTRATOR,                              ARB CASE NO.  04-061
WAGE AND HOUR DIVISION,
UNITED STATES DEPARTMENT                    ALJ CASE NO.  2003-CLA-5
OF LABOR,
                                            DATE: SEP 2 9 2005
    PLAINTIFF,

v.

RONALD L. AND DEBBIE L. HALSEY,

    RESPONDENTS.

BEFORE:   THE ADMINISTRATIVE REVIEW BOARD

Appearances:

*For the Plaintiff:*
    Claire Brady White, Esq., Paul L. Frieden, Esq., Steven J. Mandel, Esq., Howard M. Radzely, Esq., Solicitor, *U.S. Department of Labor, Washington, D.C.*

*For the Respondents:*
    Arthur S. Robinson, Esq., *Robinson & Associates, Soldotna, Alaska*

## FINAL DECISION AND ORDER

    Ronald L. and Debbie L. Halsey have petitioned for review of an Administrative Law Judge's (ALJ) Order Granting Government's Motion for Summary Decision on Liability holding that they violated the child labor provisions of the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C.A. §§ 212(c)-(d) and 216(e) (West 1998), and the implementing regulations at 29 C.F.R. Parts 570 and 516 (2003), and petition for review of the ALJ's Order Setting Civil Money Penalty, imposing a civil money penalty of $11,700.00 for the violations. The Wage and Hour Administrator has responded, urging the Board to affirm the ALJ's conclusions and imposition of a penalty. We affirm the ALJ's holding that the Halseys violated the FLSA's child labor provisions and affirm the ALJ's imposition of a civil money penalty of $11,700.00 for the violations.

## BACKGROUND

The material facts as stated by the ALJ are not in dispute. Order on Liability at 2; Order on Penalty at 2-3. We summarize briefly.

The Halseys held permits from the state of Alaska to engage in commercial salmon fishing in Cook Inlet, Alaska in the summers of 2001 and 2002. Samuel Gammon worked on the Halseys' boat in the summer of 2001, when the Halseys knew that Gammon was 13 years old, and again in the summer of 2002, when the Halseys knew that Gammon was 14 years old. On July 12, 2002, Gammon drowned in the waters of Cook Inlet after the boat capsized.

The Department of Labor's Wage and Hour Division (WHD) investigated. The WHD found that the Halseys violated the child labor provisions at Section 12(c) of the FLSA, 29 U.S.C.A. § 212(c), by illegally employing Gammon in 2001 and 2002 in "oppressive child labor." WHD assessed a penalty of $700.00 for the Halseys' illegal employment of Gammon in 2001, when he was under 14 years old, and assessed a penalty of $11,000 for the Halseys' illegal employment of Gammon in 2002, when he was 14 years old and drowned, for a total of $11,700.00. The Halseys timely filed an exception to the decision and the case was referred to the ALJ. The parties agreed to bifurcate the liability phase and, if necessary, the penalty phase of the case. The liability phase of the case was decided pursuant to cross motions for summary judgment that the parties filed and the parties agreed that the penalty phase be decided based on their written submissions.

The ALJ initially determined that Gammon engaged "in commerce" for FLSA purposes when working on the Halseys' boat and, therefore, he was an individual covered by the protections of the Act's child labor provisions. *See* 29 U.S.C.A. §§ 203(b) and 212(c); Order on Liability at 3-4. Next, the ALJ found that the Halseys admitted that their boat, on which Gammon worked, was involved in the transportation of fish or "property" by water. Thus, the ALJ concluded that the Halseys employed Gammon, a minor between 14 and 16 years of age, in an occupation deemed to be oppressive child labor pursuant to 29 C.F.R. §§ 570.33(f)(1) and 570.119(f)(1). Order on Liability at 4-5. Finally, the ALJ rejected the Halseys' contention that Gammon was a self-employed independent contractor and held that Gammon was the Halseys' "employee" for purposes of the Act. 29 U.S.C.A § 203; 29 C.F.R. § 570.113(a); Order on Liability at 5-7. Consequently, the ALJ concluded that there was no genuine issue of material fact and granted the Administrator's motion for summary decision, and denied the Halseys' cross-motion for summary decision.

Subsequently, the ALJ issued an Order Setting Civil Money Penalty. The ALJ noted that the Halseys did not contest the assessed $700.00 penalty for the Halseys' illegal employment of Gammon in 2001 when he was 13 years old. Order on Penalty at 2; *see also* Halseys' Jan. 27, 2004 Affidavits at 3. Next, the ALJ independently considered the factors for determining the amount of the civil penalty for the Halseys' illegal employment of Gammon in 2002, when he was 14 years old and drowned, as

delineated at 29 C.F.R. § 579.5. The ALJ found that the facts in this case warranted that the maximum statutory penalty of $11,000.00 be assessed in this case. Order on Penalty at 4-6. Consequently, the ALJ affirmed the civil money penalty the Administrator set, as it comports with the statute and regulations, and therefore ordered the Halseys to pay a civil money penalty of $11,700.00 for their violations of Section 12(c) of he Act, 29 U.S.C.A. § 212(c), in 2001 and 2002.

### ISSUES PRESENTED

I. Whether the Administrator had jurisdiction under the FLSA to investigate the Halseys' alleged violations.

II. Whether the ALJ erred in concluding that there is no genuine issue of material fact that the Halseys violated Section 12(c) of the FLSA and, therefore, that the Administrator is entitled to summary decision.

III. Whether the ALJ erred in concluding that there is no genuine issue of material fact that Gammon was not a self-employed independent contractor, but was the Halseys' "employee" for purposes of the FLSA.

IV. Whether the ALJ erred in determining the amount of the civil monetary penalty for the Halseys' violations of Section 12(c) of the FLSA.

### JURISDICTION AND STANDARD OF REVIEW

The Secretary has delegated to the Administrative Review Board the authority and responsibility to act for her in civil money penalty cases arising under the child labor provisions of the FLSA. Secretary's Order No. 1-2002, 67 Fed. Reg. 64272 (Oct. 17, 2002); see 29 U.S.C.A. § 216(e). The Board has jurisdiction, inter alia, to hear and decide appeals taken from the ALJs' decisions and orders. 29 C.F.R. § 580.13.

Section 216(e) of the FLSA requires that administrative hearings in cases involving civil money penalties for violations of the child labor provisions be conducted in accordance with Section 554 of the Administrative Procedure Act (APA). 5 U.S.C.A. § 554 (West 1996). See 29 U.S.C.A. § 216(e). Section 557(b) of the APA states, in pertinent part, that "[o]n appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision . . . ." 5 U.S.C.A. § 557(b). Thus, the Board reviews the ALJ's decision de novo. 5 U.S.C.A. §§ 554, 557. See *Administrator, Wage and Hour Div. v. Elderkin Farm*, ARB Nos. 99-033 and 99-048, ALJ No. 95-CLA-31, slip op. at 11 (ARB June 30, 2000) (The ARB conducts de novo review except that the ALJ's credibility determinations of a witness are entitled to deference). A grant of summary decision is also reviewed de novo, i.e., under the same standard the ALJs employ. *Honardoost v. Peco Energy Co.*, ARB No. 01-030, ALJ 00-ERA-36, slip op. at 4 (ARB Mar. 25, 2003). Set forth at 29 C.F.R. § 18.40(d) and

derived from Rule 56 of the Federal Rules of Civil Procedure, that standard permits an ALJ to "enter summary judgment for either party [if] there is no genuine issue of material fact and [the] party is entitled to summary decision."

## DISCUSSION

I.  **The ALJ properly found that Gammon was subject to coverage under the FLSA.**

Initially, the Halseys argue that they are not subject to the FLSA because the annual gross volume of sales for their commercial fishing business or enterprise were less than $500,000.00, or, alternatively, because only the Halseys themselves were "regular" employees of their commercial fishing business, pursuant to the 1989 FLSA amendments as delineated at 29 U.S.C.A § 203(s)(1)-(2).

Section 12(c) of the FLSA provides that "[n]o employer shall employ any oppressive child labor in commerce or in the production of goods for commerce *or* in any enterprise engaged in commerce." 29 U.S.C.A. § 212(c) (emphasis added). Section 3(d) defines an employer as any person acting directly in relation to an employee. 29 U.S.C.A. § 203(d). Thus, coverage exists under the FLSA's child labor provisions if either Gammon was employed in oppressive child labor in commerce (individual coverage), 29 U.S.C.A. § 203(b) (defining "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof"), *or* if the employer is an "enterprise engaged in commerce" (enterprise coverage), 29 U.S.C.A. § 203(s) (defining "enterprise engaged in commerce" as enterprises whose annual gross volume of sales is not less than $500,000, but not as establishments whose only regular employees are the owner). *See Chao v. A-One Medical Serv., Inc.*, 346 F.3d 908, 914 (9th Cir. 2003) (interpreting identical language in 29 U.S.C.A. § 207 regarding coverage under the FLSA's overtime provisions); *Zorich v. Long Beach Fire Dep't & Ambulance Serv., Inc.*, 118 F.3d 682, 686 (9th Cir. 1997) (interpreting identical language in 29 U.S.C.A. § 206 regarding coverage under the FLSA's minimum wage provisions).[1] As the Ninth Circuit summarized, "the FLSA provides two independent types of coverage, and that an employee who engages in commerce is individually covered regardless of whether his employer qualifies as a covered enterprise," *Zorich*, 118 F.3d at 686.

The Halseys sold the fish they caught to Ocean Beauty Seafoods, which in turn sent 95% of the fish it purchased from Cook Inlet fishermen to Seattle, Washington for processing. *See* Apr. 28, 2003 Declaration of Wayne Kvasnikoff at 1; Respondent's Responses to Petitioner's First Set of Interrogatories, Requests for Admissions and

---

[1] The FLSA's minimum wage and overtime provisions cover any "employees ... engaged in commerce or in the production of goods for commerce, or [ ] employed in an enterprise engaged in commerce." 29 U.S.C.A. §§ 206(a), 207(a)(1).

Requests for Production (RR1), Attachment A, Admissions 7-8. Thus, because Gammon helped unload fish from the Halseys' boat, which were then sold to Ocean Beauty Seafoods and sent on to Seattle, the ALJ concluded that Gammon engaged "in commerce" for FLSA purposes. *See* Order on Liability at 4; *see also Figueroa v. America's Custom Brokers, Inc.*, 48 F. Supp. 2d 1372, 1375 (S.D. Fla. 1999), citing *Walling v. Consumer's Co.*, 149 F.2d 626, 629 (7th Cir. 1945) (employees who load and unload goods that are a part of interstate commerce are engaged in commerce for purposes of the FLSA). Consequently, the ALJ held that Gammon was individually covered under the FLSA regardless whether the Halseys' business qualified as a covered "enterprise engaged in commerce."

The Halseys do not challenge and a review of the record indicates no genuine issue of material fact regarding the ALJ's conclusion that Gammon engaged "in commerce" for FLSA purposes. Moreover, the Halseys' contention that their business does not qualify as an "enterprise engaged in commerce," which is covered under FLSA Section 3(s)(1)-(2), has no bearing on the ALJ's independent conclusion that Gammon engaged "in commerce" and, therefore, is individually covered under the FLSA. *See Zorich*, 118 F.3d at 686. Accordingly, we affirm the ALJ's conclusion that Gammon was subject to FLSA coverage.

## II. The ALJ properly concluded that the Halseys employed Gammon in oppressive child labor and, therefore, violated Section 212(c) of the FLSA.

Next, the Halseys argue that the work Gammon performed is not considered to be oppressive child labor under the FLSA child labor provisions. Section 12(c) of the FLSA provides that covered employers may not employ children under "oppressive child labor" conditions. 29 U.S.C.A. § 212(c). The Act defines "oppressive child labor" as including, for minors under the age of 16, "any occupation," but allows that "employment of minors between the ages of fourteen and sixteen years in occupations other than manufacturing and mining shall not be deemed to constitute oppressive child labor if and to the extent that the Secretary of Labor determines that such employment is confined to periods which will not interfere with their schooling and to conditions which will not interfere with their health and well-being." 29 U.S.C.A. § 203(l). In this regard, the Secretary has provided that employment of minors between the ages of 14 and 16 years shall be confined to periods "[n]ot more than 8 hours in any 1 day when school is not in session," *see* 29 C.F.R. § 570.35(a)(4), and has prohibited specifically the employment of minors between 14 and 16 years of age in occupations in connection with "[t]ransportation of ... property by ... water," *see* 29 C.F.R. §§ 570.33(f)(1) and 570.119(f)(1).

The Halseys admitted that they "transported fish across water." RR1, Attachment A, Admission 6. Thus, the ALJ concluded that the Halseys employed Gammon, a minor between 14 and 16 years of age, in an occupation deemed to be oppressive child labor pursuant to Sections 570.33(f)(1) and 570.119(f)(1). Order on Liability at 4-5.

However, the ALJ did not address a Department of Labor Wage and Hour Division publication entitled "Youth Employment Rules in Net Fishing" that the Halseys submitted in conjunction with their motion for summary judgment. *See* Respondent's Exhibit (RX) 2. The Wage and Hour Division publication lists the FLSA's standards for child labor "applicable to the net fishing industry" and states that the "youth employment provisions of the FLSA apply to minor employees whose work involves catching fish, working on fishing boats and/or the processing of fish that will leave the state directly or indirectly and become part of interstate commerce." RX 2 at 1. It further notes that the FLSA rules "also apply where a minor employee is not actually fishing or processing fish, but works in an *establishment* that has employees that fish or employees that process fish for interstate commerce if the minor is performing work that is closely related and directly essential to such work," (emphasis added). *Id*. Although indicating that it "does not carry the force of legal opinion," *see* RX 2 at 4, the publication indicates that 14-year old children may work in the net fishing industry if, in relevant part, they work "no more than 8 hours on a non-school day," *see* RX 2 at 1. On the other hand, the publication further includes among a list of banned hazardous occupations, relevant to net fishing work performed by minors under 16, occupations in connection with the transportation of property on water. *See* RX 2 at 2.

In light of the Wage and Hour Division's publication delineating the Secretary's applicable child labor regulations, in conjunction with the Secretary's definition of an "establishment" for purposes of the FLSA's child labor provisions found at 29 C.F.R. § 570.109(a)(1), the Halseys contend that the employment of minors between the ages of 14 and 16 years of age in commercial net fishing is permitted. Section 570.109(a)(1) defines "establishment" for the purposes of the FLSA's child labor provisions as a "distinct physical place of business" "in which goods are produced" and that it includes a "[b]oat ... where productive activities such as catching ... fish are carried on." *See* 29 C.F.R. § 570.109(a)(1). Thus, because the regular source of Gammon's income came from a commercial fishing establishment whose sole purpose is catching fish, and not any subsequent incidental transportation of the fish, the Halseys argue that his work should not be considered to be oppressive child labor under the child labor provisions of the FLSA.

In response, the Administrator asks that the Board defer to the "Wage and Hour Field Operations Handbook" (FOH), that lists prohibited occupations for minors between 14 and 16 years of age which are considered to be "in connection with transportation" pursuant to 29 C.F.R. §§ 570.33(f)(1) as:

> (1) jobs performed on ... boats, or other media of transportation;
>
> (2) jobs performed in, on, or in close proximity to ... docks or wharves, ... or other such places where power-driven equipment designed or used for transportation ... is repaired ... or may be in motion; and,

> (3) jobs in loading or unloading ... boats ... or other media of transportation.

FOH, Chapter 33, Section 33b05 (b) (Rev. 599, Dec. 28, 1993).

Contrary to the Halseys' characterization, the work of a minor between the ages of 14 and 16 years of age in the commercial net fishing industry may, in some instances, be deemed to be oppressive child labor pursuant to Sections 570.33(f)(1) and 570.119(f)(1) of the regulations if it involves work in an occupation in connection with the transportation of property by water. In this regard, the WHD's publication delineating the Secretary's child labor regulations "applicable to the net fishing industry" is not inconsistent with Section 570.33(f)(1) of the regulations and Section 33b05 (b) of the FOH. The WHD's publication does contemplate that 14-year old children may work in the net fishing industry in some capacity, as it specifically delineates the periods and conditions for such employment similar to that found in the regulations at 29 C.F.R. § 570.35(a). However, while indicating that a minor between the ages of 14 and 16 years of age may work "in an establishment that has employees that fish," it further indicates, consistent with the regulations and the FOH, that minors under 16 may not work in occupations connected with the transportation of property on water, which is listed as a hazardous occupation for that age group. Thus, work in the net fishing industry that involves actually working on a fishing boat catching and transporting fish by water is apparently prohibited for minors between 14 and 16 years of age, but is restricted to minors only between 16 and 18 years of age.

Moreover, courts have held that the Administrator's FOH interpretations are due some degree of deference, *see, e.g., Reich v. Miss Paula's Day Care Ctr., Inc.*, 37 F.3d 1191, 194 (6th Cir. 1994), and the Board, too, looks to the FOH for assistance in interpreting the Act's and its regulations' provisions. The Secretary has the power to resolve any ambiguities in her own regulations implementing the FLSA and her interpretation is controlling unless "plainly erroneous or inconsistent with the regulation." *See Auer v. Robbins*, 519 U.S. 452, 461-463 (1997); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945). In this instance, there is no reason to suspect that the Secretary's interpretation that the Halseys' employment of Gammon when he was 14 years of age should be deemed to be oppressive child labor pursuant to Section 570.33(f)(1) of the regulations does not reflect the agency's fair and considered judgment on this issue based on the undisputed facts in the record. *See, e.g., Auel*, 519 U.S. at 462.

The evidence in the record establishes that the Halseys knew that Gammon was 13 years of age in 2001 and 14 years of age in 2002. RX 1 at 2; RR1, Attachment A, Admission 4; Halseys Jan. 27, 2004 Affidavits at 2, 4.[2] Consequently, we hold that the

---

[2] Our de novo review of the relevant evidence in the record also indicates that Gammon was working more than 8 hours a day as a 14-year old minor at the time of his drowning. The Halseys admit that Gammon worked during the allowed fishing period, from

Continued . . .

Halseys employed Gammon in oppressive child labor in 2001 when he was 13 years of age in violation of the FLSA's child labor provisions at Sections 12(c) and 3(l) and when Gammon worked as a 14-year old minor at the time of his drowning, in violation of the standards the Secretary set forth at 29 C.F.R. §§ 570.33(f)(1) and 570.119(f)(1), implemented to protect the health and well-being of minors in accordance with Sections 12(c) and 3(l) of the Act.

### III. The ALJ properly concluded that Gammon was not a self-employed independent contractor, but was an "employee" for purposes of the FLSA.

Alternatively, the Halseys contend that Gammon was a self-employed independent contractor and not their "employee" for purposes of the FLSA. Specifically, the Halseys note that under the Internal Revenue Service's (IRS) tax regulations, a person who is engaged in the commercial catching of fish and is paid based on a share of the proceeds from the boat's catch is deemed to be a self-employed independent contractor. In this case, Gammon was paid a share from the sale of the fish that the Halseys caught and his income was reported to the IRS as non-employee compensation. *See* RX 1 at 2; RR1, Attachment A, Admission 1, Answer to Interrogatory 9; Attachment B, Answer to Interrogatories 4-5, 7-8. In addition, the Hasleys note that the permanency of Gammon's work was only seasonal and of a short duration.

As the ALJ noted, courts have adopted an expansive interpretation of the definitions of "employer" and "employee" under the FLSA, to effectuate the Act's broad remedial purposes. *See Real v. Driscoll Strawberry Assoc., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979); *see also Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997); Order on Liability at 5-6. The common law concepts of "employee" and "independent contractor" are not conclusive determinants of the FLSA's coverage. *See* 29 C.F.R. § 570.113(a); *Real*, 603 F.2d at 754. "Employees" for purposes of the FLSA are those who as a matter of economic reality are dependent upon the business to which they render service. *Real, supra; see also Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961). In determining whether a person is an "employee" for purposes of the FLSA, the courts have identified a number of factors that should be considered to distinguish employees from independent contractors:

---

7:00 AM to 7:00 PM, helping on their boat to set the fishing nets "at the beginning of the fishing period" until helping to retrieve the nets "at the close of the fishing period," and that Gammon "did not work in excess of 12 hours a day." *See* RX 1 at 2; RR1, Attachment A, Answer to Interrogatory 5; Halseys Jan. 27, 2004 Affidavits at 2-3. Indeed, the Halseys indicate that Gammon drowned near the end of the 12-hour fishing period day. Halseys Jan. 27, 2004 Affidavits at 4. Thus, his work could also be considered to be oppressive child labor in violation of the standards set forth at 29 C.F.R. § 570.35(a)(4).

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
>
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanence of the working relationship; and
>
> 6) whether the service rendered is an integral part of the alleged employer's business.

*See Donavan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981); *Real, supra*. Although this list is not exhaustive and neither the presence or absence of any individual factor is determinative, it does summarize the factors the Supreme Court has deemed relevant. *See Donavan, supra* and *Real, supra* citing *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *United States v. Silk*, 331 U.S. 704, 716 (1947). The determination depends "upon the circumstances of the whole activity," *see Rutherford Food Corp.*, 331 U.S. at 730; *Donavan*, 656 F.2d at 1370; *Real*, 603 F.2d at 754, and ultimately, whether, as a matter of economic reality, the individuals "are dependent upon the business to which they render service," *see Bartels*, 332 U.S. at 130; *Donavan*, 656 F.2d at 1370.

Initially, the ALJ expressed doubt as to whether an unemancipated minor such as Gammon could be an independent contractor, noting that 14-year old children do not have the capacity to appreciate the differences, as a matter of law, between an independent contractor and an employee. Order on Liability at 6. Although an employer may wish to treat a worker as an independent contractor for tax purposes, the ALJ found that the term "independent" is incompatible with the dependent status of a minor such as Gammon who was legally not able to enter into a "contract" while a minor.

Ultimately, the ALJ applied the factors that the courts consider to distinguish an independent contractor from an "employee" for purposes of the FLSA. The ALJ found that Mr. Halsey acknowledged that he hired Gammon, determined the amount and manner of his pay, and assigned Gammon's work duties.[3] Gammon's work duties were related to the business of catching fish, the ALJ noted, but did not require any specialized

---

[3]  *See* RX 1 at 2; RR1, Attachment A, Answer to Interrogatory 9; Attachment B, Admissions 4, 7.

skills and were performed in exchange for value or his share of the catch.[4] Order on Liability at 6-7. In addition, the ALJ found that the Halseys owned the boat and fishing nets, paid for Gammon's fishing license and supplied him with necessary equipment.[5] Although the ALJ acknowledged the Halseys' contention that Gammon's work was only seasonal, the ALJ found that factor was not significant in this case involving a minor, as the child labor provisions preclude permanent employment. Nevertheless, the ALJ found that as Gammon had worked for the Halseys for consecutive summers, they had an ongoing working relationship.

Consequently, applying the relevant factors, the ALJ concluded that the Halseys had: 1) complete control over the manner in which Gammon's work was performed on their boat; 2) Gammon exercised no managerial skills; 3) Gammon had no investment in equipment or materials required for his work; 4) no specialized skills were required for his work; 5) the working relationship was ongoing, while its permanence was not significant as it was precluded in this case involving a minor under the child labor provisions; and 6) Gammon's services were an integral part of the Halseys' fishing enterprise. Order on Liability at 7. Accordingly, because the ALJ properly considered the relevant factors in conjunction with the undisputed material facts to determine whether Gammon was an "employee" for FLSA purposes, the ALJ's determination that Gammon was the Halseys' "employee" for purposes of the Act is affirmed. *See* 29 U.S.C.A § 203; 29 C.F.R. § 570.113(a).

### IV. The ALJ properly assessed a civil monetary penalty of $11,700.00 for the Halseys' violations of Section 212(c) of the FLSA.

Finally, as the Halseys raised the issue of the civil money penalties in excepting to the WHD's initial assessment, the ALJ independently considered the pertinent factors pursuant to the statute and the regulations in determining the appropriateness of the entire $11,700.00 in assessed penalties against the Halseys for violations of the FLSA's child labor provisions in his separate Order Setting Civil Money Penalty.[6] Under FLSA

---

[4] *See* RX 1 at 2; RR1, Attachment A, Answer to Interrogatory 5; Halseys' Jan. 27, 2004 Affidavits at 2.

[5] *See* RX 1 at 3; RR1, Attachment A, Answer to Interrogatory 9; Attachment B, Admissions 1-3, 9.

[6] Although the WHD used a computer program applying Form 266, a standard schedule and guidelines for its investigators in assessing and making the initial recommendation of civil money penalties, *see* Wage and Hour Field Operations Handbook, Chapter 54, "Investigation and Related Forms," WH-266-1 (July 11, 1994), it did not offer its calculations into evidence. Thus, the ALJ independently considered the pertinent factors to be weighed pursuant to the statute and the regulations in determining the appropriateness of the entire $11,700.00 in assessed penalties. Order on Penalty at 3-5.



Section 16(e), an employer who violates the child labor provisions shall be subject to civil penalties for each minor employed in violation of the statute or the regulations. In determining the amount of the penalty, "the appropriateness of [the] penalty to the size of the business of the person charged and the gravity of the violation shall be considered." 29 U.S.C.A. § 216(e). The implementing regulation reiterates the statute. 29 C.F.R. § 579.5(a). The maximum penalty for each employee for any violation occurring on or after January 7, 2002, is $11,000.00. *Id.* Subsection (b) provides certain factors to consider in determining the size of the business, including the number of persons employed, the dollar volume of sales or business done, the amount of capital investment and financial resources, and such other information as may be available relative to the size of the business. 29 C.F.R. § 579.5(b). Subsection (c) provides factors relating to the gravity of the violation, including any history of prior violations, evidence of willfulness or failure to take reasonable precautions to avoid violations, the number of minors illegally employed, the age of minors so employed and records of required proof of age, the occupations in which the minors were so employed, exposure of such minors to hazards and any resultant injury to such minors, the duration of such illegal employment, and the hours of the day and whether such employment was during or outside school hours. 29 C.F.R. § 579.5(c). By contrast, subsection (d) deals with mitigating factors of a violation and the determination of whether a civil penalty would be necessary to achieve the purposes of the FLSA. These are whether the violations were de minimis, whether there is no previous history of child labor violations, whether the employer's assurance of future compliance is credible, and whether exposure to obvious hazards was inadvertent rather than intentional. 29 C.F.R. § 579.2(d). *See generally, Administrator, Wage and Hour Div. v. Navaho Mfg.*, 92-CLA-13 (Sec'y Feb. 21, 1996).

Initially, the ALJ noted that the Halseys did not contest the assessed $700.00 penalty for the Halseys' illegal employment of Gammon in 2001 when he was 13 years old. Order on Penalty at 2; *see also* Halseys Jan. 27, 2004 Affidavits at 3. Next, the ALJ independently considered the factors for determining the amount of the civil penalty for the Halseys' illegal employment of Gammon in 2002, when he was 14 years old and drowned, as delineated at 29 C.F.R. § 579.5.

The ALJ stated that the maximum statutory penalty is appropriate in this case involving a child of 14 who died while employed in oppressive child labor, unless outweighed by any mitigating factors. Order on Penalty at 5. The fact that the Halseys' business is small and the penalty for their 2002 violation could equal their 2002 fishing season's earnings[7] is outweighed, the ALJ found, by the gravity and tragic consequences of the violation involved. The ALJ found that the Halseys knew Gammon was a minor, but did not consider the FLSA's child labor provisions when they hired him, nor did they contend that they were misled by anyone. Order on Penalty at 5-6. Moreover, the ALJ found that they were multiple offenders of the provisions due to violations in 2001 and 2002 and that there were no assurances of future compliance contained in the record.

---

[7]  The Halseys' 2002 fishing season's earnings totaled 11,357.00. *See* RX 1 at 4; RR1, Attachment A.

Finally, the ALJ found that the job Gammon performed was self-evidently hazardous to his well-being, as all of the boat's crew wore life vests, reflecting the inherent danger of work on water. Consequently, the ALJ found that the Halseys' 2002 violation was not de minimis, but that the maximum statutory penalty of $11,000.00 was warranted in this case and comported with the statute and regulations. Order on Penalty at 6. Consequently, the ALJ affirmed the civil money penalty the Administrator set, as it comports with the statute and regulations, and therefore ordered the Halseys to pay a total civil money penalty of $11,700.00 for their violations of Section 12(c) of he Act, 29 U.S.C.A. § 212(c), in 2001 and 2002.

Accordingly, because the ALJ properly considered the relevant factors for determining the amount of the civil penalty for the Halseys' violations and the Halseys do not challenge the determination on appeal, we affirm the ALJ's order that the Halseys pay a civil money penalty of $11,700.00 for their violations of Section 12(c) of he Act, 29 U.S.C.A. § 212(c), in 2001 and 2002.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the ALJ's holding that the Halseys violated the child labor provisions of the FLSA and the ALJ's imposition of a civil money penalty of $11,700.00 for the violations. The Halseys are **ORDERED** to pay a civil money penalty of $11,700.00.

**SO ORDERED.**

**M. CYNTHIA DOUGLASS**
**Chief Administrative Appeals Judge**

**WAYNE C. BEYER**
**Administrative Appeals Judge**